UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LAUREN DAITZ, As Executor of the Estate of
LEON R. DAITZ, Deceased, and LAUREN DAITZ,
Individually,

                             Plaintiffs,

              -against-

ATR NEW YORK LH, INC. d/b/a ATRIA PARK
OF LYNBROOK and ATRIA SENIOR LIVING,
INC.,

                             Defendants.
------------------------------------------------------------------------X

For Online Publication Only

FILED
CLERK
9/25/2025 9:17 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
25-CV-01591 (JMA) (LGD)

**AZRACK, United States District Judge:**

Presently before the Court is the motion by Defendants ATR New York LH and Atria Senior Living Inc. pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") to compel arbitration and stay this action brought by Plaintiff Lauren Daitz, as Executor of the Estate of Leon Daitz and individually. (ECF No. 10.) For the reasons set forth below, the motion is GRANTED and this action is STAYED.

## I.     BACKGROUND

A court deciding a motion to compel arbitration "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up); see also Sanchez v. Clipper Realty, Inc., 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022) ("Courts routinely consider documents outside the pleadings when evaluating motions to compel arbitration . . . ."). Accordingly, this Memorandum & Order draws most of its facts from the declarations and exhibits Defendants submitted in support of the instant motion. See Crawley v. Macy's Retail Holdings, Inc., No. 15-CV-2228, 2017 WL 2297018, at *1 n.1 (S.D.N.Y. May

25, 2017). The key exhibit is the Residency Agreement between Leon Daitz and Atria Park of Lynbrook contained in Leon Daitz's resident file, which includes a binding Arbitration Agreement. (See ECF No. 10-5, Ex. B.) The Court also considers the May 16, 2025 affidavit of Charlene Lindsay-Jorgensen, the current Executive Director of Atria Lynbrook, who avers that this Residency Agreement and the other documents submitted in support of Atria's Motion to Compel Arbitration are indeed genuine and maintained by Atria in the regular course of its business. (See ECF No. 12-1, Affidavit of Charlene Lindsay-Jorgensen, ¶¶ 1-6.)

On August 28, 2022, Elizabeth M. Daitz, as Power of Attorney for Leon Daitz, executed a residency agreement with Atria Park of Lynbrook, which permitted Decedent to reside at Atria Park of Lynbrook in exchange for consideration ("Residency Agreement"). (See ECF No. 10-1, Major Decl., Ex. B.) On that date, Elizabeth Daitz executed several pages of the Residency Agreement including a standalone "Arbitration Agreement." (Id. at 65-67.) The Arbitration Agreement states: "[t]his agreement is entered into voluntarily by the Parties and is not a prerequisite to residing at the Community or receiving services at the Community." (Id. at 66.) The Arbitration Agreement further provides that:

> this Agreement pertains to any and all claims and disputes related to or arising out of Resident's residence at Community that may be asserted by either party against the other party as well as any claim or dispute that may be asserted by or against Atria Management company, LLC, any and all past, present, and/or future parent, affiliated, principals, or subsidiary entities, and any and all agents/employees or contractors of same (collectively "Atria"), as well as any owner, leasee, or licensee of Community. These claims and disputes pertain to legal claims, civil actions, and/or disputes related to or arising out of Resident's residency at Community or otherwise relating to the care or services provided to Resident at the Community by and through Atria . . . any claim or dispute asserted against Atria shall be resolved through submission to individual arbitration as governed by the Federal Arbitration Act . . ."

(Id. at 66.)

2

The Arbitration Agreement further expressly states that by entering into the contract, the parties were "waiving their constitutional right to have any claims decided before a jury or otherwise heard in a court of law, and instead are accepting the use of arbitration." (Id. at 66.) The Arbitration Agreement states that it covers claims or actions against Atria brought by a party other than the resident, such as a "legal representative" "arising out of or relating to the care [the resident] received at Atria." (Id. at 66.) At the time she signed the Residency Agreement and Arbitration Agreement, Elizabeth M. Daitz was in fact the Power of Attorney and Health Care Proxy for Decedent. (See Major Decl., Ex. C.) Decedent granted these plenary authorities to Elizabeth M. Daitz on April 24, 2012 and November 17, 2009, respectively. (Id.)

Decedent moved into Atria Park of Lynbrook on August 28, 2022. (See Major Decl., Ex. B.) Plaintiff alleges that a series of negligent acts occurred "continuously from August 28, 2022 through and including January 31, 2024" with regard to the medical and nursing practices and procedures rendered to Decedent. (See Major Decl., Exhibit A, ¶ 27.) These allegations include negligent failure to properly administer medication, failure to ensure proper dosing of medication, failure to appropriately review physician's orders, and host of other negligent failures with regards to Decedent's treatment and care at the facility. (Id.) Plaintiff further alleges that Decedent's death on January 31, 2024 was "occasioned by the negligence, malpractice, and statutory violations of the Defendants herein." (Id. ¶ 44.) Based on these allegations, Plaintiff brings six causes of action: (i) Violation of N.Y. Public Health Law §§ 2801, 2803; (ii) General Negligence; (iii) Medical Malpractice; (iv) Lack of Informed Consent; (v) Negligent Hiring and Retention; and (vi) Wrongful Death. (Id. ¶¶ 23-53.) On March 21, 2025, Defendants removed this action from New York State Court to the United States District Court for the Eastern District of New York based on

diversity jurisdiction. (ECF Nos. 1-3.) On April 17, 2025, Defendants filed the instant motion to compel arbitration. (ECF No. 10.)

## II. DISCUSSION

### A. The FAA

The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA thus reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

"In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022). If a court concludes that the parties agreed to arbitrate, it must then determine "(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." Id.

As noted above, the Court undertakes this analysis by considering all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party. Meyer, 868 F.3d at 74; Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). This standard is "similar to that applicable for a motion for summary judgment." Meyer, 868 F.3d at 74 (internal quotation marks omitted).

4

B.     **The Parties Agreed To Arbitrate**

The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman, 49 F.4th at 101-02. "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." Id. at 102; see Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022) (similar). Whether such an agreement existed is a question of applicable state contract law. Zachman, 49 F.4th at 101; Barrows, 36 F.4th at 50. New York law applies here because the Residency Agreement and Arbitration Agreement, which provide the terms for compulsory arbitration, are governed by New York law. (Major Decl., Ex. B at 20; 67); see Zachman, 49 F.4th 95 at 101 (evaluating arbitration clause under New York law consistent with the agreement's choice of law provision). Under New York law, the formation of a valid contract requires an offer, acceptance, consideration, mutual assent, and intent to be bound. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004). An arbitration clause in a written agreement is enforceable under New York law when "the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted).

Defendants demonstrated that an agreement to arbitrate exists between the parties. Defendants produced Plaintiff's signed Residency Agreement and Arbitration Agreement in which Plaintiff expressly consented to arbitrate disputes as provided in the Arbitration Agreement. (See Major Decl., Ex. B at 66-68.) Additionally, Defendant submitted the May 16, 2025 affidavit of Charlene Lindsay-Jorgensen, the current Executive Director of Atria Lynbrook, who avers that the Documents submitted in support of Atria's Motion to Compel Arbitration are indeed genuine and

5

maintained by Atria in the regular course of its business. (See ECF No. 12-1, Lindsay-Jorgensen Aff. ¶¶ 1-6.)

"Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" Zachman, 49 F.4th at 102 (quoting Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010)). To this end, Plaintiff argues in her Opposition Memorandum that the authenticity of the Residency Agreement is in question because it was initially offered without a certification or affidavit supporting it. (ECF No. 11 ¶ 5.) Plaintiff argues that since no Atria Representative attested to the authenticity of these documents in conjunction with Defendants' initial motion to compel, there exist "serious questions regarding the circumstances under which the agreement was allegedly executed, and whether same was even entered into as defendants claim." (Id. ¶¶ 6-8.) "Plaintiff, however, has not submitted any affidavit or other admissible evidence in support of this assertion." Pierre v. Macy's Inc., No. 16-CV-2556, 2016 WL 11652066, at *4 (E.D.N.Y. Nov. 23, 2016). Plaintiff's assertions in her Opposition Memorandum are not sufficient to create a genuine issue of fact with regard to whether she signed an arbitration agreement. Id. The only evidence before the Court shows that Plaintiff signed the Residency Agreement and Arbitration Agreement and thereby consented to the arbitration terms. Furthermore, Defendants submitted with their reply brief the May 16, 2025 affidavit of Charlene Lindsay-Jorgensen, the current Executive Director of Atria Lynbrook, who avers that the Documents submitted in support of Atria's Motion to Compel

6

Arbitration are indeed genuine and maintained by Atria in the regular course of its business. (See ECF No. 12-1, Lindsay-Jorgensen Aff. ¶¶ 1-6.)[1]

### C. The Arbitration Clause Covers Plaintiff's Claims

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173, 179 (2d Cir. 2021) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010)) (emphasis removed). The Court must apply "ordinary principles of contract interpretation" to determine whether "a particular dispute is covered by the [arbitration] language to which the parties agreed."[2] Local Union 97, IBEW v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023).

---

[1] Plaintiff also raises the argument that Defendants "failed to establish 'the relationship of the transaction . . . to interstate or foreign commerce'" in order to invoke the FAA's applicability. (See ECF No. 11 ¶ 5.) Section 2 of the FAA provides that arbitration provisions in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has held "that the word 'involving' is broad and is indeed the functional equivalent of 'affecting,'" Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-74 (1995), "signal[ing] an intent to exercise Congress' commerce power to the full." Id. at 277. The Act applies to transactions that "in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." Id. at 281. In keeping with the broad interpretation of "involving commerce," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). The Court finds that the Residency Agreement affects interstate commerce, in that it includes, inter alia: (i) the provision of furnishings, appliances, and other items supplied by the operator to the residents; (ii) provision of meals, snacks, and meal plans to residents; (iii) coordinating health care treatment through Resident's health care providers and arranging for health care services and other assistance as needed by Residents. (See Major Decl., Ex. B.) All of those provisions affect interstate commerce. Furthermore, the mailing address for the owner of the real property where the community is located and the operator of the community is in Louisville, Kentucky. (Id. at 26-27.) Accordingly, the FAA governs the purported arbitration provisions in this case. See Rainbow Health Care Center, Inc. v. Crutcher, 2008 WL 268321, *2–6 (N.D.Okla. 2008) (arbitration agreement in nursing home admission contract was governed by FAA; the provision of nursing home care amounted to interstate commerce); Washburn v. Beverly Enterprises–Georgia, Inc., 2006 WL 2728627, *2 (S.D.Ga. 2006) (FAA applied since "nursing home care substantially affects interstate commerce in the aggregate and is also subject to federal control").

[2] Courts may also "as a last, rather than first, resort" rely on the "presumption of arbitrability." Local Union 97, IBEW, 67 F.4th at 114. Under that principle, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including when 'the problem at hand is the construction of the contract language itself.'" Cooper, 990 F.3d at 186 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). The presumption can "only be overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of

The Arbitration Agreement plainly encompasses Plaintiff's claims as it specifically states the parties agreed to arbitrate "legal claims, civil actions, and or/disputes related to or arising out of [Decedent's] residency at Community or otherwise relating to the care of services provided to [Decedent] at the Community by and through Atria."  (Major Decl., Ex. B at 66.)   Plaintiff's claims clearly arise out of the care and services Atria provided to the Decedent when he was a resident of Atria Park of Lynbrook, as the particulars of Plaintiff's claims concern alleged negligence which occurred at Atria Park of Lynbrook from August 28, 2022 through January 31, 2024.  (See e.g., Major Decl., Ex. A, ¶¶ 24-25. (alleging that Atria "deprived Plaintiff of his rights by violating or failing to comply with mandates established by contract, statute, code, rule and/or regulation" which cause Decedent to sustain severe and permanent injuries, with significant conscious pain and suffering, as well as additional expenses and loss of income and services."))  Plaintiff's second through sixth causes of actions similarly concern Decedent's residency at Atria Park of Lynbrook.  (Id. ¶¶ 26-53. )  As these claims and allegations directly relate to and arise out of the care and services Atria provided to the Decedent, they are covered under the Arbitration Agreement and are required to be arbitrated.

**D.     The Court Will Stay This Action**

All of Plaintiff's claims are arbitrable.  See supra Parts II.B, II.C.  The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 343 (2d Cir. 2015).  A stay "enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes

---

coverage."  Local Union 97, IBEW, 67 F.4th at 114 (internal quotation marks and alterations omitted).  It is unnecessary for the Court to rely on the presumption of arbitrability here.

judicial interference until there is a final award." Id. at 346.  Accordingly, the Court will stay this action pending completion of arbitration.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is GRANTED and this action is STAYED pending arbitration.

The Clerk of the Court is respectfully directed to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[3]

**SO ORDERED.**

Dated: September 25, 2025
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[3] See Zimmerman v. UBS AG, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.  Nor does it amount to an appealable dismissal." (internal quotation marks and citation omitted)).